UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE:

Shannon D. Schmaus,  Case No. 04-74636
 Chapter 7
 Debtor.  Hon. Phillip J. Shefferly
_____/

Stuart A. Gold, Trustee,

 Plaintiff,

vs.  Adv. No. 05-5192

Jason E. Schmaus,

 Defendant.
_____/

**TRIAL OPINION GRANTING (1) JUDGMENT IN FAVOR OF DEFENDANT UNDER § 547(b); (2) JUDGMENT IN FAVOR OF PLAINTIFF UNDER § 548(a)(1)(B); AND (3) JUDGMENT IN FAVOR OF PLAINTIFF WITH RESPECT TO DEFENDANT'S COUNTER COMPLAINT**

I. Introduction

This matter is before the Court upon a complaint filed by the Chapter 7 Trustee seeking a judgment against the Defendant, Jason E. Schmaus, the brother of Debtor, Shannon D. Schmaus. The Plaintiff's complaint alleges alternate theories of recovery for avoidance of a fraudulent transfer or a preferential transfer. Count I is brought under § 548(a)(1)(B) of the Bankruptcy Code and Count II is brought under § 547(b) of the Bankruptcy Code.[1] The Defendant filed a counter-complaint seeking recovery against the

---

[1] All references to the Bankruptcy Code in this opinion are to the Bankruptcy Code as it existed prior to the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005. This is because the Debtor filed her chapter 7 case prior to October 17, 2005, the effective date of that Act.

Plaintiff under a theory identified as "contribution" or "recoupment." Trial of this adversary proceeding was held on January 19, 2006. The Court heard testimony from the Plaintiff, the Defendant, the Debtor, and Lynette Heide, the mother of the Defendant and the Debtor. The Court admitted into evidence the Plaintiff's and the Defendant's joint exhibits 1 through 10. At the conclusion of the trial, the Court took the matter under advisement. The following constitutes this Court's findings of facts and conclusions of law under Fed. R. Bankr. P. 7052. For the reasons set forth in this opinion, the Court will enter a judgment in favor of the Plaintiff and against the Defendant in the amount of $5,000 and will dismiss the Defendant's counter-complaint against the Plaintiff.

## II. Jurisdiction

This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(a) and § 157(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(B), (F) and (H).

## III. Facts

On May 25, 1999, the Debtor and the Defendant executed a land contract (Ex. 1), agreeing to purchase a residence located at 28050 Maple, Roseville, Michigan. The land contract describes the "purchaser" as "SHANNON SCHMAUS and JASON E. SCHMAUS, a single man, JOINT TENANTS WITH FULL RIGHTS OF SURVIVORSHIP." The Defendant, the Debtor and Heide all testified that Heide provided a $10,000 down payment for the purchase. Heide is not shown on the land contract. Heide testified that there was no other writing identifying her as having an interest in the property. After the Debtor and the Defendant entered into the land contract, the Debtor, the Defendant and Heide moved into the residence. They each testified that they lived there until May, 2004. The Debtor and Heide testified that, during the time that they lived there, they did not make any payments on the land contract,

nor contribute to repair, maintenance or taxes for the property, nor pay rent.

The Debtor and the Defendant testified that they sold the Maple property on May 28, 2004. The seller's settlement statement (Ex. 2) shows the Debtor and the Defendant as the sellers and reflects that the sellers received $31,197.16 of net proceeds. The Debtor and the Defendant both signed the seller's settlement statement. On the same day, the Debtor and the Defendant signed the Housing and Urban Development settlement statement (Ex. 3) as sellers, and it too shows a net amount due to sellers of $31,197.16 after payment of the underlying land contract and other closing obligations with respect to the property. At the closing, the Debtor and the Defendant signed a warranty deed (included in Ex. 3), which identifies the grantors as "JASON E. SCHMAUS, A SINGLE MAN AND SHANNON SCHMAUS AS TENANTS WITH FULL RIGHTS OF SURVIVORSHIP." A check (Ex. 4) in the amount of $31,197.16 was issued by Great Lakes Title of Michigan, Inc. on May 28, 2004 to "Jason E. Schmaus and Shannon Schmaus." The Debtor testified that she and the Defendant went to the bank together and cashed the check, signing the back. Exhibit 4 shows the reverse side of the check, with the endorsements of both the Debtor and the Defendant.

A central factual issue in this case is what happened to the proceeds of the sale. The Debtor, the Defendant and Heide all testified that the arrangement was that Heide was to be repaid the $10,000 down payment she advanced. They all testified that this arrangement was not in writing. The Debtor, the Defendant and Heide also were in agreement that Heide was in fact paid $10,000 from the sale proceeds. The testimony was conflicting as to what happened to the balance of the funds.

On direct examination by the Plaintiff, the Debtor stated that she did not receive any money from the sale. During the Defendant's case-in-chief, on direct examination, the Debtor testified that the

Defendant took half of the funds, and she took "the balance" home to repay Heide. On questioning by the Court, the Debtor explained that she went to the bank with the Defendant, cashed the check, and he "took his half." The Debtor took the rest home and paid Heide the $10,000 that Heide was owed. The balance "went for furniture or something like that." When asked by the Court to clarify what she meant by "his half," the Debtor stated that the Defendant retained approximately $15,000. The Court then asked if the Debtor "took a like sum," and the Debtor responded "yes." On redirect, the Debtor added that she was not taking her half of the proceeds, but was returning those funds to her mother, Heide, and although she took half the funds, she did not keep those funds. The Debtor could not remember the form of the funds that she took. The Defendant testified that the Debtor did not receive any portion of the sale proceeds because she was not entitled to receive any because the Defendant had made all the payments on the land contract. According to the Defendant, Heide was repaid the $10,000 and "the other half was mine." The "change went into the house" and the Debtor "got nothing."

The Debtor's insolvency was also a contested factual issue. The Debtor testified that, at the time of the sale of the property on May 28, 2004, her only assets consisted of a 1997 Jeep Wrangler worth between $7,000 and $8,000, some household goods and wearing apparel worth approximately $2,500, and whatever interest the Debtor may have had in the Maple property. On that date, the Debtor owed approximately $6,400 with respect to the 1997 Jeep Wrangler and owed another $19,300 of unsecured debt.

On December 8, 2004, the Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. The Debtor's schedules of assets and liabilities and statement of financial affairs (Ex. 6) show that on the date of the petition the Debtor had assets aggregating $9,500 and consisting of the

-4-

same assets she owned on May 28, 2004. The Debtor's schedules show aggregate debts of $25,700 consisting of the same debts that were outstanding on May 28, 2004. The Debtor's schedules of assets and liabilities and statement of financial affairs do not disclose that Debtor had any interest in the Maple property nor that she had transferred any interest in that property within the year prior to her bankruptcy case. The Debtor's schedules of assets and liabilities and statement of financial affairs make no mention at all of the Maple property. The Plaintiff testified that he learned of this property at the Debtor's Section 341 meeting, when the Debtor revealed that she had purchased the property on a land contract with her brother, subsequently sold it and received none of the proceeds.

On May 9, 2005, the Plaintiff filed this adversary proceeding. The adversary proceeding complaint alleges that all $31,197.16 of net proceeds from the sale of the Maple property went to the Defendant and that half of those net proceeds, or $15,598.58, should have gone to the Debtor. To the extent that the Defendant received the Debtor's one-half share of the proceeds in addition to his own one-half share of the proceeds, the Plaintiff asserts that the Defendant received either a preferential transfer or a fraudulent transfer, which must be repaid to the bankruptcy estate.

IV. Analysis

A.   Preferential Transfer Under § 547(b)

Count II of the Plaintiff's complaint alleges a transfer of the Debtor's one-half share of the net proceeds from sale of the Maple property to the Defendant on May 28, 2004 on account of an antecedent debt owed by the Debtor to the Defendant. To recover under this section of the Bankruptcy Code, the Plaintiff must prove each of the elements of § 547(b). Section 547(b) provides as follows:

> Except as provided in subsection (c) of this section, the trustee may avoid any

   transfer of an interest of the debtor in the property –
    (1) to or for the benefit of a creditor;
    (2) for or on account of an antecedent debt owed by the debtor before such
  transfer was made;
    (3) made while the debtor was insolvent;
    (4) made –
     (A) on or within 90 days before the date of the filing of the petition; or
     (B) between ninety days and one year before the date of the filing of the
     petition, if such creditor at the time of such transfer was an insider; and
    (5) that enables such creditor to receive more than such creditor would receive if –
     (A) the case were a case under chapter 7 of this title;
     (B) the transfer had not been made; and
     (C) such creditor received payment of such debt to the extent provided
  by the provisions of this title.

11 U.S.C. § 547(b).

  "Transfer" is defined in § 101(54) of the Bankruptcy Code as "mean[ing] every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property . . . ." Id. § 101(54). Assuming, arguendo, that a "transfer" occurred, the Plaintiff must then prove each element under § 547(b) in order to prevail. To meet the first and second elements under § 547(b)(1), the transfer must have been "to or for the benefit of a creditor" and made "on account of an antecedent debt owed by the debtor before such transfer was made." "Creditor" is defined in § 101(10) of the Bankruptcy Code as an "entity that has a claim against the debtor . . . ." "Claim" is defined in § 101(5)(A) as a "right to payment." "Debt" is defined in § 101(12) of the Bankruptcy Code as "liability on a claim."

  Both the Debtor and the Defendant testified that the Debtor did not contribute to any payments made with respect to the land contract for the Maple property or to maintenance, repairs or taxes for the property. Neither the Debtor nor the Defendant testified that the Defendant ever asked the Debtor to pay

-6-

the Defendant any rent in exchange for residing at the Maple property. Similarly, there was no testimony that the Defendant ever requested that the Debtor contribute to land contract payments, maintenance, repairs or taxes for the property. There was no testimony that the Debtor agreed to pay any amounts to the Defendant to reside at the property or agreed to contribute to land contract payments, maintenance, repairs or taxes for the property.

The only evidence in the record that could possibly support a finding that the Defendant had some right to payment from the Debtor that could arguably create a claim and therefore make the Defendant a creditor of the Debtor, consists of the fact that the Debtor and the Defendant are identified on the land contract (Ex. 1) as "joint tenants with full rights of survivorship." Although denying the existence of a debt and also denying that he was a creditor with a claim against the Debtor, the Defendant did assert in his counter-complaint (Ex. 9) that he was entitled to "contribution" or "recoupment" from the Debtor because she was a co-tenant with him on the Maple property. However, Michigan law provides that, absent an agreement, one co-tenant is not liable to another co-tenant for rent or for compensation for services rendered in connection with the common property such as maintenance, repairs or management services. See DesRoches v. McCrary, 24 N.W.2d 511, 513 (Mich. 1946) ("A tenant in common of lands cannot recover of his cotenant for the use and occupation by the latter of the lands claimed in common, in the absence of any express promise . . . .") (internal quotation marks and citation omitted); Gay v. Berkey, 100 N.W. 920, 921 (Mich. 1904) (finding "in the absence of an agreement," cotenants could not "recover for services against the other, rendered in connection" with the property).

No evidence was introduced to prove the existence of any agreement between the Debtor and the Defendant regarding the payment of rent, maintenance, repair or taxes. Because the record is devoid of

-7-

such evidence, the Court concludes that the Plaintiff has failed to meet his burden of proof to show that the Defendant was a creditor and has failed to prove that the receipt by the Defendant of the proceeds of sale of the Maple property was on account of an antecedent debt owed to the Defendant by the Debtor. Accordingly, the first and second elements of a preferential transfer under § 547(b)(1) and (2) have not been shown by the Plaintiff. Because those elements are necessary to any recover under § 547(b), there is no reason to consider whether the Plaintiff proved the existence of any other elements of § 547(b). Therefore, the Defendant is entitled to a judgment of no cause of action on Count II of the Plaintiff's complaint, which seeks recovery of a preferential transfer.

B.  Fraudulent Transfer Under § 548(a)(1)(B)

Count I of the Plaintiff's complaint alleges that the Defendant was only entitled to receive one-half of the net proceeds of sale of the Maple property and that the other half of the net proceeds, consisting of $15,598.58, should have been paid to the Debtor, but instead was paid to the Defendant. The Plaintiff alleges that this receipt of proceeds by the Defendant can be recovered as a fraudulent transfer under § 548(a)(1)(B). That section of the Bankruptcy Code provides as follows:

> The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily . . .
> (B) (i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
> (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;
> (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; or
> (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured.

-8-

11 U.S.C. § 548(a)(1)(B).

In order to recover under this statute, the Plaintiff must first prove that there was a "transfer" of an interest of the Debtor in property. The Defendant and the Debtor both testified that the Debtor did not have an interest in the Maple property. In addition, the Defendant testified that the Debtor's name was only placed on the land contract (Ex. 1) because of "convenience," in case "something should happen to me." The testimony of the Debtor and the Defendant on this issue was not credible. The land contract (Ex. 1) created an interest in the Maple property for the Debtor and described her as a "joint tenant with full rights of survivorship." The Debtor signed the land contract as a purchaser with such rights. Further, when the Debtor and the Defendant sold the property on May 28, 2004, the Debtor signed numerous documents identifying her as having an interest in the property. The seller's settlement statement (Ex. 2) and the Department of Housing and Urban Development settlement statement (Ex. 3) both identify the Debtor as having an interest in the Maple property and as a seller of the Maple property. Most telling is the warranty deed (Ex. 3 at p.4) signed by the Debtor, in which the Debtor is again identified as a "joint tenant with full rights of survivorship," purporting to "convey and warrant" her interest in the Maple property to the grantee identified on the deed. Other than the Debtor's and the Defendant's bald statements that the Debtor "had no interest" in the Maple property, there is no evidence to contradict the identification and description of the Debtor's interest in this property that appeared in numerous documents signed by the Debtor.[2] The

---

[2] The Court is unable to accept these bald statements as the truth because the witnesses were not always believable, especially the Defendant. The incredibility of the Defendant's testimony on this issue is highlighted in his responses to the Plaintiff's questioning concerning his current home. The Defendant testified that he purchased his current residence solely by himself, and did not purchase it with the Debtor or put her on the title. His explanation was that the Debtor did not pay for the new house so he saw no reason to add her name to the title. When asked why he put the Debtor's name on

-9-

05-05192-pjs    Doc 41    Filed 01/30/06    Entered 01/30/06 15:18:28    Page 9 of 18

Court finds that the Debtor did have an interest as a joint tenant with full rights of survivorship in the land contract vendee's interest with respect to the Maple property, and therefore had an interest in the proceeds of sale of that property.[3]

The Plaintiff's complaint alleges that the Debtor's interest in the proceeds of sale of the Maple property was transferred to the Defendant. As evidence of this transfer, the Plaintiff relies upon the allegations set forth in paragraph 9 of Plaintiff's complaint (Ex. 7) and the response contained in paragraph 9 in Defendant's answer to complaint (Ex. 8).

Paragraph 9 of Plaintiff's complaint (Ex. 7) alleges the following:

> The Debtor did not receive any of the proceeds of the sale of the property to which she was entitled. Instead, Defendant received the entire sales proceeds of $31,197.16, including the Debtor's one-half interest or $15,598.58 (the "Transfer").

Paragraph 9 of Defendant's answer to complaint (Ex. 8) responds to Plaintiff's allegations as follows:

---

the Maple property when he had earlier testified that she did not contribute toward the purchase price or land contract payments for that property, the Defendant responded "in case something happened to me." The Plaintiff's counsel then asked what had changed from when the Maple property was purchased. The Defendant explained that the difference was that he was going to be married this year, and intended to put his fiancee's name on the title. When the Plaintiff's counsel asked when the Defendant got engaged, the Defendant said "nine years ago." When the Plaintiff's counsel noted that the Defendant was still in the same situation as when he purchased the Maple property, the Defendant became evasive and could no longer remember exactly when he got engaged. When faced with the obvious inconsistency in his purported motivation, the Defendant's story changed. Twice. Moreover, the Defendant's memory, which had up to then been clear, suddenly became hazy.

[3] The Debtor, the Defendant and Heide all made gratuitous comments in their testimony that the Plaintiff was somehow unfairly prosecuting this action. After holding out to the world for five years that the Debtor was a joint tenant and after the Debtor warranted that she was a joint tenant by signing the warranty deed, they all believed that their secret, unwritten agreement should be honored. All three steadfastly refused to accept the consequences of their actions. Instead, they sought to blame the Plaintiff, who is simply carrying out his responsibilities under the Bankruptcy Code, a process, by the way, that was voluntarily commenced by the Debtor.

-10-

The debtor was not entitled to any proceeds from the sale, for the reason that Jason E. Schmaus, who made the payments, was entitled to recoup the portion of the payments due from debtor, and the mother of Jason E. Schmaus may have additionally some recoupment rights.

The Plaintiff argues that paragraph 9 of the Defendant's answer does not deny that the Defendant received the entire sales proceeds of $31,197.16, including the Debtor's one-half interest of $15,598.58. According to the Plaintiff, because the Defendant failed to deny this fact in his answer to paragraph 9, such failure is treated as an admission pursuant to Fed. R. Civ. P. 8(d) as incorporated in this adversary proceeding by Fed. R. Bankr. P. 7008. That rule provides as follows:

> **Effect of Failure to Deny**. Averments in a pleading to which a responsive pleading is required, other than those as to the amount of damage, are admitted when not denied in the responsive pleading. Averments in a pleading to which no responsive pleading is required or permitted shall be taken as denied or avoided.

It is true that paragraph 9 of Defendant's answer does not deny receipt of all of the sale proceeds. Instead, paragraph 9 attempts to provide an explanation for why the Defendant received all of the sale proceeds. At trial, the Defendant testified that he was not aware that his answer did not actually deny receipt of all of the sale proceeds, and that this was the first he had heard of this allegation. The Defendant testified in response to questioning from the Plaintiff's counsel that he did not receive all of the sale proceeds, notwithstanding the apparent absence of any denial of such allegation in paragraph 9 of his answer to complaint. The Defendant further testified that $10,000 of the sale proceeds were paid to Heide as a return of the down payment that she had provided when the property was purchased. The Debtor corroborated that testimony, explaining that she personally took $10,000 of the proceeds and paid it to Heide as a return of the down payment. Heide testified that she received the $10,000.

The Defendant argues that even though his answer to paragraph 9 of the Plaintiff's complaint does

-11-

not specifically use the word "deny," it is somehow implicit in his answer that the Defendant did not receive all of the proceeds and the Defendant should not be barred from now introducing testimony to show that he did not receive all of the proceeds. At best, the Defendant's answer to paragraph 9 is sloppy. By not actually admitting or denying paragraph 9, the Defendant's answer also has a hide-the-ball tone that, to some extent, may have led the Plaintiff to believe that there was no factual dispute as to whether the Defendant actually received all of the net proceeds of sale. As a consequence, the Plaintiff argues that he did not believe there to be a genuine factual issue. However, notwithstanding this argument, both the Plaintiff's counsel and the Defendant's counsel elicited testimony from the Defendant (and from the Debtor and Heide) that showed that the Defendant did not actually receive all $31,197.16 of net proceeds, the Plaintiff eliciting this testimony as part of his case-in-chief over the objection of the Defendant.

The Defendant's answer to paragraph 9 of the complaint failed to deny that the Defendant received all of the proceeds and is insufficient under Fed. R. Civ. P. 8(b) and (d). The general rule is that "a defendant's failure to deny an allegation in the plaintiff's complaint takes the issue out of the case." Phelps v. McClellan, 30 F.3d 658, 662 (6th Cir. 1994) (citation omitted). Accordingly, the Court could conclude under Fed. R. Civ. 8(d) that paragraph 9 in the Defendant's answer constitutes an admission that the Defendant received all $31,197.16 of the net sales proceeds and bars the Defendant from introducing any evidence to the contrary. However, in the circumstances of this case, the Court concludes that that would be an overly rigid application of Fed. R. Civ. P. 8(d), which would require the Court to ignore clearly contrary evidence that did make its way into the record, and could produce an unjust result. In the joint final pre-trial order, the Plaintiff raised the effect of the Defendant's answer as a potential evidentiary problem and stated that he anticipated objecting to the introduction of any evidence that was inconsistent

with the Defendant's "admission" in his answer that he received all of the sale proceeds. However, at the trial, on direct examination during his case-in-chief, the Plaintiff himself elicited testimony from the Defendant as to exactly how much of the sale proceeds he received. The Plaintiff's own questioning actually sought the admission of the testimonial evidence that contradicted the Plaintiff's argument that the Defendant's answer was a binding admission.

The Court concludes that the Plaintiff waived his objection to the admission of any evidence contrary to paragraph 9 of the Defendant's answer. See White v. ARCO/Polymers, Inc., 720 F.2d 1371, 1396 (5th Cir. 1983) (noting the general rule that "[n]ormally, factual assertions in pleadings . . . are considered to be judicial admissions conclusively binding on the party who made them" but finding that a party had waived the argument by "not insist[ing] on strict adherence to this precept" and instead questioning a witness about facts relating to the matter at issue). The Court does not condone the Defendant's failure to deny the allegations made in paragraph 9 of the Plaintiff's complaint, nor does it encourage this style of pleading in the future. However, in view of the fact that testimony was elicited by both the Plaintiff's counsel and the Defendant's counsel demonstrating that the Defendant did not receive all of the proceeds, the Court will not consider the answer to paragraph 9 of the Plaintiff's complaint to constitute an admission that the Defendant received all of the proceeds from the sale such that any other evidence is barred. The Court notes that, although the Defendant's response in paragraph 9 of his answer "can no longer be considered conclusive," it "still operate[s] as [an] adverse evidentiary admission[ ] properly before the [Court] in its resolution of the factual issue." Id. (citation omitted).

Having found that the Debtor had an interest in the proceeds from the sale of the Maple property, and that the Defendant is not bound to an admission that he received all of the proceeds, the issue then is

-13-

whether some portion of the Debtor's interest in the net sale proceeds was transferred to the Defendant. The Defendant admits to receiving $15,598.58 which he describes as "his half." On the issue of what she received, the Debtor's testimony was inconsistent. At times she stated she received no proceeds and then at other times she stated that she took one-half of the check (Ex. 4), paid her mother and paid for "furniture or something like that," but kept no money for herself. Similarly, the Defendant's testimony was inconsistent. He too first said that the Debtor received no money but later testified that he took his one-half and the Debtor took the other $15,598.58. On one issue, the witnesses were clear. The Defendant, the Debtor and Heide all testified that $10,000 went to return the down payment provided by Heide. No witness offered any explanation as to why the return of the $10,000 down payment to Heide came entirely out of the $15,598.58 that the Debtor claims she took from the bank that day rather than coming half from her share and half from her brother's share. Even after the $10,000 was paid to Heide, that still leaves $5,598.58 of proceeds, which the Debtor and the Defendant only vaguely accounted for as going "into the house" or "for furniture."

    Because the Debtor and the Defendant each had a one-half interest in the Maple property, they were each entitled to one-half of the net sale proceeds, or $15,598.58, upon its sale. It is not clear to the Court that Heide had any lawful entitlement to a return of the $10,000 down payment but, if such entitlement exists, it seems to the Court logical that $5,000 should have come out of the Defendant's one-half share and $5,000 should have come out of the Debtor's one-half share. That means then that rather than being entitled to $15,598.58 as their respective one-half share of the net sale proceeds, the Debtor and the Defendant would each be entitled to $10,598.58 after payment of the $10,000 to Heide. By permitting all $10,000 of the return of the down payment to Heide to be taken out of the Debtor's one-half

-14-

05-05192-pjs    Doc 41    Filed 01/30/06    Entered 01/30/06 15:18:28    Page 14 of 18

share of the net sales proceeds, the Debtor effectively transferred to the Defendant property having a value of $5,000, representing the one-half of the down payment that should have come out of the Defendant's one-half share of the net sales proceeds. In other words, instead of receiving $15,598.58, the Defendant should have received only $10,598.58, assuming an obligation truly existed to pay Heide back the $10,000 down payment.

Although the Court finds the testimony of both the Debtor and the Defendant to be somewhat inconsistent and vague, after weighing all of the evidence in the record, the Court concludes that the Plaintiff has met his burden of proving a transfer to the Defendant. That transfer consists of the sum of $5,000 of the Debtor's one-half share of the net sales proceeds. If Heide was entitled to the return of the down payment, it should have been borne by both joint tenants, meaning that their respective share of the net sales proceeds would have only been $10,598.58. Because the Debtor paid back the entire $10,000 down payment out of her one-half share of the proceeds, there was effectively a transfer of $5,000 by the Debtor to the Defendant. However, the Court is unable to conclude that the Plaintiff has met his burden to show that the unaccounted for $5,598.58 of proceeds was actually transferred by the Debtor to the Defendant. There is simply not enough evidence in the record for the Court to conclude that the Defendant actually received that sum in addition to the $15,598.58 that he admits receiving. Accordingly, the Court finds that the first element of § 548(a)(1)(B) is met: there was a transfer consisting of $5,000 of the Debtor's interest in the Maple property sale proceeds.

The Court also finds that the Plaintiff met his burden to prove the other elements necessary to avoid this transfer of $5,000 under § 548(a)(1)(B) of the Bankruptcy Code. The transfer occurred on May 28, 2004, within one year before the date of the filing of the Debtor's bankruptcy petition. There was no

evidence that the Debtor received any value, let alone a reasonably equivalent value, from the Defendant in exchange for this transfer. The Plaintiff elicited testimony from the Debtor establishing that her assets and liabilities on the date that she filed bankruptcy were the same as those that existed on May 28, 2004, the date of the transfer by her of the sales proceeds to the Defendant. The Debtor testified that she owned a 1997 Jeep Wrangler and some personal property on both the date of transfer and the date of the petition. She testified further that the liabilities shown on her bankruptcy schedules (Ex. 6) also existed on May 28, 2004. Therefore, by transferring $5,000 of her interest in the sales proceeds to the Defendant on May 28, 2004 without receiving any value in exchange, the Debtor became insolvent. Accordingly, the Court finds that the Plaintiff has met his burden of proof to show all the elements of § 548(a)(1)(B) with respect to the transfer of $5,000 of the Debtor's share of the net sales proceeds to the Defendant. The Plaintiff simply did not prove that any more of the sales proceeds were transferred by the Debtor to the Defendant. The proofs demonstrated that $10,000 of proceeds went to Heide and the record just does not establish what became of the other $5,598.58. The transfer of $5,000 is recoverable by the Plaintiff under § 548(a)(1)(B).

C.  Defendant's Counter-Complaint

The Defendant's counter complaint asserts that the Defendant has some rights of contribution and/or recoupment against the Debtor's estate. As explained earlier in the opinion, Michigan law only imposes liability upon one co-tenant to another co-tenant for rent and for contribution to the repair, maintenance and taxes where there is an express agreement shown to exist between the co-tenants. There is no proof of such agreement in this case. Nor are there any equitable circumstances or considerations shown by the Defendant to warrant the imposition of a duty of contribution by the Debtor to the Defendant in this case. The Defendant simply chanted that, because the Defendant and the Debtor were co-tenants,

-16-

the Debtor was somehow responsible to the Defendant to reimburse land contract payments, repairs, maintenance and taxes that the Defendant may have paid for with respect to the Maple property. That is insufficient under Michigan law. The Defendant asserted throughout this case that he was not a creditor of the Debtor and he had no right to payment from the Debtor. That helped him in his defense of the § 547(b) preference claim. The contention set forth in the counter-complaint that he is entitled to some form of contribution seems disingenuous to the Court in light of his testimony and his pleadings. Nevertheless, the Court concludes that the Defendant failed in any event to meet his burden to establish any entitlement to contribution under Michigan law.

The Defendant's counter-complaint also asserts a right of recoupment. Apparently, the theory here is that, because he paid for land contract payments, repair, maintenance and taxes on the property, the Defendant is entitled to somehow recoup some or all of those payments out of the net sales proceeds when the property was sold. Again, that theory is inconsistent with the Defendant's testimony that he did not receive any more than his one-half share of the net proceeds upon the sale of the Maple property. Aside from that inconsistency, the Defendant utterly failed to prove the elements necessary for recoupment. "[Recoupment] is applied when there are countervailing claims arising from the same transaction strictly for the purpose of abatement or reduction." In re Delicruz, 300 B.R. 669, 680 (Bankr. E.D. Mich. 2003) (internal quotation marks and citation omitted). The concept of recoupment "provides for the adjudication of the just apportionment of liability relative to a dispute regarding a single transaction." Id. The Court concludes that the Defendant failed to meet his burden of proof to establish an entitlement to recoupment or contribution. Therefore, the Plaintiff is entitled to a judgment of no cause of action with respect to the Defendant's counter-complaint.

V. <u>Conclusion</u>

For the reasons set forth in this opinion, the Court will grant judgment in favor of the Plaintiff and against the Defendant in the amount of $5,000. The Court will enter a judgment of no cause of action in favor of the Plaintiff and against the Defendant with respect to the Defendant's counter-complaint.

**Entered: January 30, 2006**

                                        **/s/ Phillip J. Shefferly**
                                        **Phillip J. Shefferly**
                                        **United States Bankruptcy Judge**